# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TIM BAXTER | * | |
| Plaintiff | * | |
| v | * | Civil Action No. DKC-10-2364 |
| SGT. ENGIL, *et al.* | * | |
| Defendants | * | |

## MEMORANDUM OPINION

Pending is Defendants' Motion to Dismiss or for Summary Judgment. ECF No. 24. Although he was advised of his right to file a response in opposition to Defendants' motion and of the consequences of failing to do so, Plaintiff has not opposed the motion. *See* ECF No. 25. Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2010).

## Background

Plaintiff is confined to a wheelchair and is incarcerated at Western Correctional Institution (WCI). He alleges that on February 3, 2009, he was transported by prison staff for a court appearance in a wheelchair accessible van, but was not properly secured in the van by officers Wallace and Martin. He states he told the officers many times that all of his seat-belts and other restraints needed to be secured but the officers ignored him. During the trip there was an accident. Plaintiff was thrown from his wheelchair and landed against the steel cage. He claims he was rushed to emergency medical care at University of Maryland Hospital where he stayed for several days due to his serious injuries. ECF No. 1 at p. 2.

Plaintiff claims that when he returned to WCI, Lt. Friend interviewed Plaintiff about the accident. During the course of the interview Plaintiff "let it be known" that he intended to file a

lawsuit regarding the incident. In response to Plaintiff's statement Lt. Friend allegedly said, "No I don't think you want to do that; it would make things very badly (sic) for you around here they are our family, you don't want this kind of problem on you." ECF No. 1 at p. 2 Plaintiff characterizes Friend's statement as a threat on his life, but nonetheless filed "procedures." *Id.*

Plaintiff claims that on August 12, 2010, he asked Officer Snyder to get a sergeant or lieutenant for him to talk to, but Snyder replied in a disrespectful manner, refused to help him, and commented that he should mace and kill Plaintiff. ECF No. 1 at p. 3. Plaintiff's response to Snyder's alleged comments was to "slice up" his legs and to ask Officer Salesky to get a sergeant or lieutenant for him to speak to. Salesky also refused. He alleges that Snyder and Salesky left him in his cell bleeding for over one-half hour until Sgt. Boore was "finally" notified. *Id.* Plaintiff does not explain why he needed to speak with a supervisory officer. Plaintiff claims that Officer Miller "also stated to another officer to let me bleed and die." *Id.* at p. 4. He alleges Miller and Snyder are conspiring to mistreat him. He states he was left bleeding until the new shift of officers arrived.

Plaintiff also claims that prison staff are not processing Administrative Remedy Procedure complaints (ARPs) properly. He states he filed a complaint regarding an assault he suffered on June 12, 2009, at Roxbury Correctional Institution (RCI) when he was confined in the ASIA building. ECF No. 1 at p. 5. Plaintiff claims he told Officer Brumage that he was having trouble maneuvering in cell #3 and asked to be moved to cell #4. He also claims the toilet was broken in cell #3. Plaintiff alleges the Brumage "wasn't trying to help" so he asked to speak with Brumage's supervisor. Brumage allegedly told Plaintiff his supervisor, Lt. Stigile, was not going to do anything but take his side. Plaintiff claims that when Stigile arrived he did not ask any questions but maliciously rammed Plaintiff into a bolted down metal bedframe

2

causing him to be thrown from his wheelchair. *Id*. Plaintiff told Stigile he would be filing a civil suit regarding the assault. Plaintiff alleges that in response, Stigile coerced Brumage into writing a false notice of infraction charging Plaintiff with flooding the cell and ripping a mattress. Plaintiff was ultimately charged $50 for destruction of state property at his adjustment hearing. He claims he was left on the floor of the cell with no mattress, wheelchair, or running water. *Id*. Plaintiff alleges he was transported to Maryland Correctional Adjustment Center (MCAC) where an injury to his arm was noted and documented by Lt. Colby. He further claims his arm was x-rayed, but does not state what the x-ray showed. Plaintiff requests $500 for each day he served in disciplinary segregation (150 days) and seeks to press criminal charges against Stigile for assault. *Id*. at p. 6.

This court denied Plaintiff's request for injunctive relief after reviewing evidence submitted by Defendants establishing that Plaintiff engages in self-injurious behavior as a manipulation tactic and is prone to exaggerations. Plaintiff's claims that his life was in danger and that he should be transferred from WCI appear to have been a product of Plaintiff's attempts to manipulate correctional staff. In their unopposed Motion to Dismiss or for Summary Judgment, Defendants deny using abusive or threatening language in their dealings with Plaintiff. In addition, they state that even though Plaintiff's self-inflicted injuries are superficial, they have taken every conceivable measure to protect Plaintiff by searching his cell after they become aware he has cut himself.

Lt. Friend is the only named Defendant implicated in Plaintiff's claim regarding the February 3, 2009 van accident. ECF No. 1. Friend states in his declaration that he did not learn about Plaintiff's involvement in the accident until one year after it had occurred and never spoke with Plaintiff about it. ECF No. 24 at Ex. A, pp. 2—3. He further states that he has been sued

by inmates countless times and views it as part of what his job running a disciplinary segregation housing unit in a prison involves. By way of explanation for Plaintiff's allegation, Friend states that Plaintiff is "problematic and manipulative." *Id*. at 3. Friend has had numerous conversations with Plaintiff in the context of supervising the housing unit where Plaintiff is confined and most of those conversations concerned Plaintiff's attempts to be removed from Friend's housing unit (Housing Unit 4) to the overflow disciplinary segregation unit (Housing Unit 3), to increase the possibility that he would have access to more of his property. Another frequent topic is Plaintiff's requests for a transfer to another prison which Friend explains is not possiblie while Plaintiff is serving disciplinary segregation time and is likely inappropriate given the limited number of prisons that are wheelchair accessible. *Id*. at p. 4. Friend adds that Plaintiff simply does not like being told "no" and frequently claims officers are disrespectful to him because his demands are not met. *Id*

Friend recalls an incident on August 12, 2010, involving Plaintiff cutting his legs during the midnight shift after he asked officers for a washcloth and towel. ECF No. 24 at Ex. A, p. 4. Friend explains that ordinarily officers do not respond to this type of request, especially on the midnight shift. *Id*. Defendant Salesky was working on the tier later that morning, at approxmiately 5:00 a.m., and learned that Plaintiff had cut himself during the midnight shift. *Id*. at Ex. C, p. 2. Plaintiff's bloody clothes were removed for purposes of cleaning them or otherwise disposing of them. *Id*. While Salesky was assisting in distributing morning "feed-up," Plaintiff told him he wanted to speak to a sergeant or a lieutenant to find out what had happened with his clothes. Salesky assured Plaintiff he would have a sergeant talk to him after he was done doing morning feed-up. *Id*. at p. 3. Plaintiff became angry when Salesky did not make immediate arrangements. *Id*.

Once finished with morning feed-up, Salesky told Defendant Boore that Plaintiff wanted to talk to him. *Id*. Boore was in the housing unit control center filling in for someone else and could not leave immediately to talk to Plaintiff because he was there alone. ECF No. 24 at Ex. B. Salesky and Boore then noticed water gushing out of Plaintiff's cell onto the tier. *Id*. at Ex. B and C. Salesky turned the water off in Plaintiff's cell, but did not enter the cell to do so. *Id*. at Ex. C, p. 3. Plaintiff had flooded the cell by stuffing paper towels into his sink. *Id*. at pp. 3 and 4. Officer Miller obtained squeegies for inmate workers to use to remove the water from the tier. *Id*.

In addition to flooding his cell, Plaintiff had apparently cut himself again on the shins. ECF No. 24 at Ex. B, p. 3. At that time Plaintiff informed Boore he was upset that his clothes were taken from him and he wanted them back. *Id*. Boore assumed the clothing was a prison-issued, orange jumpsuit, because that is what the segregation inmates wear, and told Plaintiff his clothes would have been sent out of the institution for cleaning because they had blood on them. *Id*. at pp. 3 and 4. Boore called for medical assistance and when the nurse arrived, wheeled Plaintiff to the medical room on the tier where his wounds were bandaged. *Id*. Boore states he remained with Plaintiff while he was seen by the nurse except for a brief period of time that Officer Miller stepped in to relieve him. *Id*. and Ex. E at pp. 2—3. Miller had no further contact with Plaintiff. *Id*. Boore wheeled Plaintiff back to his cell when the nurse was done rendering aid. Because the clean up effort was ongoing, Plaintiff could not return to his cell and, again, claimed he had cut himself. *Id*. at Ex. B p. 4 and Ex. C, p. 4. When asked why he had reinjured himself, Plaintiff told Boore he heard an officer say he would not be returned to his original cell. *Id*. at Ex. B, pp. 4 and 5. Plaintiff's legs were again bandaged and his cell was searched for the

instrument used. *Id*. After the search turned up nothing, it was surmised that Plaintiff had simply reopened the earlier inflicted wounds by pulling off the bandages. *Id*.

None of the named Defendants were involved in the alleged incident occurring at RCI on June 12, 2009. Accordingly, the claim shall be dismissed without prejudice.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

<u>Medical and Psychiatric Care</u>

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).

There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *See Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977). A prisoner is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2)

7

that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id.* The *Bowring* court further concluded that the aforementioned right to such treatment is based upon the essential test of medical necessity and not upon that care considered merely desirable. *Id.* at 48.

In the instant case Plaintiff injured himself for purposes of gaining attention. Defendants allege, and Plaintiff does not dispute, that when he cuts himself in this manner medical and psychology staff are notified and Plaintiff is evaluated and treated. ECF No. 24 at Ex. A, p. 4; Ex. B, pp. 3—4; Ex. C, p. 4; Ex. D, p. 3; and Ex. E, pp. 2—3. On the occasions Plaintiff received medical attention for his self-inflicted wounds Defendants indicate that he was not bleeding profusely and did not appear to be in distress. *Id*. Additionally, Defendants state that ordinarily Plaintiff injures himself when he is not given what he asks for immediately. *Id*. at Ex. A. The undisputed evidence establishes that Defendants were not deliberately indifferent to Plaintiff's serious medical or psychiatric needs. Defendants are entitled to summary judgment in their favor.

### Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm". *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury

alone is not dispositive of a claim of excessive force. *Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*.

Plaintiff alleges that Stigile assaulted him when he was confined at RCI. ECF No. 1. Stigile was never named as a Defendant in this case. Moreover, Plaintiff's only requested relief with respect to the assault is the institution of criminal charges against Stigile. As an alleged crime victim, however, Plaintiff has no constitutional right to insist upon the criminal prosecution of his alleged assailant. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (citizens lack standing to contest the policies of the prosecuting authority when he himself is neither prosecuted or threatened with prosecution); *Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir.1988) (no right to force state to prosecute others under equal protection clause). The claim shall be dismissed without prejudice.

Harassment

Verbal abuse of inmates, without more, does not state a claim of assault. *See Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979). Where a threat of harm is combined with action apparently designed to carry out the threat, an Eighth Amendment claim is stated. *See Hudspeth v. Figgins*, 584 F.2d 1345 (4th Cir. 1978). If the threats are made in order to intimidate an inmate from exercising the right to access the courts, a claim may be stated. *Id*., *see also Russell v. Oliver*, 552 F.2d 115 (4th Cir. 1977). In the instant case, Plaintiff claims he was threatened by Lt. Friend when he told Friend he planned to file a lawsuit regarding the van accident. ECF No. 1. Friend denies ever talking to Plaintiff directly about the accident. ECF No. 24 at Ex. A.

Plaintiff does not rebut that denial. As the non-moving party Plaintiff may not simply rely on "mere allegations or denials of [his] pleadings." *Baltimore Ravens,* 346 F.3d at 525.

Retaliation

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994 "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

Many of Plaintiff's allegations imply that he is mistreated because he has filed complaints about staff members. ECF No. 1. When read in light of Defendants' evidence and the medical records, however, it is clear that the only mistreatment Plaintiff is suffering is by his own hand. Plaintiff presents a pattern of demanding to speak with a particular officer about an issue that concerns him at the time and if his demand is not met fast enough he engages in manipulative, self-injurious behavior. There is no evidence that Defendants have engaged in any inappropriate conduct and they are entitled to summary judgment in their favor.

**Conclusion**

The unopposed Motion to Dismiss or for Summary Judgment, construed as a Motion for Summary Judgment, shall be granted by separate Order which follows.

Date: March 30, 2011            /s/
                                DEBORAH K. CHASANOW
                                United States District Judge